UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMMANUEL RIGATOS,<br><br>Plaintiff,<br><br>v.<br><br>WPX ENERGY INC., RICHARD E. MUNCRIEF, CLAY M. GASPAR, KIMBERLY S. LUBEL, JOHN A. CARRIG, KELT KINDICK, ROBERT K. HERDMAN, VALERIE M. WILLIAMS, KARL F. KURZ, D. MARTIN PHILLIPS, and DOUGLAS E. SWANSON, JR.<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on September 28, 2020, pursuant to which WPX Energy Inc., ("WPX" or the "Company") will be acquired by Devon Energy Corp. ("Devon").

2. On September 26, 2020, WPX's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") in an all-stock deal, pursuant to which WPX shareholders will receive 0.5165 shares of Devon common stock for each share of WPX common stock they own (the "Merger Consideration"). Upon closing of the Proposed Transaction, Devon shareholders will own

approximately 57% of the combined company and WPX shareholders will own approximately 43% of the combined company.

3. On November 5, 2020, in order to convince WPX shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of WPX shareholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so WPX shareholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NYSE, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a WPX shareholder.

10. Defendant WPX is a Delaware corporation and a party to the Merger Agreement. WPX shares are traded on the NYSE under the ticker symbol "WPX."

11. Defendant Richard E. Muncrief is Chairman of the Board, Chief Executive Officer, and a director of the Company.

12. Clay M. Gaspar is the President, Chief Operating Officer, and director of the Company.

13. Kimberly S. Lubel is a director of the Company.

14. John A. Carrig is a director of the Company.

15. Kelt Kindick is a director of the Company.

16. Robert K. Herdman is a director of the Company.

17. Valerie M. Williams is a director of the Company.

18. Karl F. Kurz is a director of the Company.

19. D. Martin Phillips is a director of the Company.

20. Douglas E. Swanson, Jr. is a director of the Company.

## FACTS

21. WPX is an independent oil and natural gas exploration and production company, engages in the exploitation and development of unconventional properties in the United States. It produces oil, natural gas, and natural gas liquids. The company operates 688 wells and owns interests in 787 wells covering an area of approximately 122,000 net acres located in Delaware Basin, Texas, and New Mexico; and operates 404 wells and owns interests in 104 wells that covers an area of approximately 87,000 net acres situated in the Williston Basin, North Dakota. As of December 31, 2019, it had proved reserves of 528 million barrels of oil equivalent. The Company was founded in 1983 and is headquartered in Tulsa, Oklahoma.

22. Devon is an independent oil natural gas exploration and production company. Devon's operations are focused onshore in the United States. Currently, Devon produces approximately 140,000 barrels of oil per day and has a deep inventory of development opportunities to deliver future growth. Devon also produces about 575 million cubic feet of natural gas a day and about 80,000 barrels of natural gas liquids per day.

23. On September 26, 2020, WPX's Board caused the Company to enter into the Merger Agreement. The Merger Agreement provides that WPX will merge with and into East Merger Sub, Inc., a Delaware corporation and a wholly-owned, direct, Subsidiary of Devon, with WPX surviving as a wholly-owned, direct subsidiary of Devon.

24. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> subject to Section 1.6(b) and Section 1.6(c), each share of East [WPX] Common Stock issued and outstanding (other than Excluded Shares) immediately prior to the Effective Time shall be converted into the right to receive from Central

[Devon] 0.5165 fully paid and nonassessable shares of common stock, $0.10 par value, of Central (the "Central Common Stock").

The number of shares of Central Common Stock into which each share of East Common Stock shall be converted, as specified in Section 1.6(a)(ii) (as such number may be adjusted in accordance with Section 1.6(b)), is referred to as the "Exchange Ratio." The aggregate number of shares of Central Common Stock issuable pursuant to Section 1.6(a)(ii), together with any cash to be paid in lieu of any fractional shares of Central Common Stock in accordance with Section 1.6(c), is referred to as the "**Merger Consideration**."

25.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's shareholders will receive in connection with the Proposed Transaction.

26.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

27.     Section 5.4 of The Merger Agreement has a "no solicitation" clause that prevents WPX from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> 5.4 No Solicitation.
>
> (a) East agrees that, except as expressly contemplated by this Agreement, neither it nor any of the East Subsidiaries shall, and East shall use its reasonable best efforts, and shall cause each of the East Subsidiaries to use their respective reasonable best efforts to, cause their respective Representatives not to (i) directly or indirectly initiate or solicit, or knowingly encourage or knowingly facilitate (including by way of furnishing non-public information relating to East or any of the East Subsidiaries) any inquiries or the making or submission of any proposal that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal with respect to East, (ii) other than clarifying terms of the Acquisition Proposal in accordance with the penultimate sentence of this Section 5.4(a), participate or engage in discussions or negotiations with, or disclose any non-public information or data relating to East or any of the East Subsidiaries or afford access to the properties, books or records of East or any of the East Subsidiaries to any Person that has made an Acquisition Proposal with respect to East or to any Person in contemplation of making an Acquisition Proposal with respect to East, or (iii) accept an Acquisition Proposal with respect to East or enter into any

agreement, including any letter of intent, memorandum of understanding, agreement in principle, merger agreement, acquisition agreement, option agreement, joint venture agreement, partnership agreement or other similar agreement, arrangement or understanding, (A) constituting or related to, or that is intended to or could reasonably be expected to lead to, any Acquisition Proposal with respect to East (other than an Acceptable Confidentiality Agreement permitted pursuant to this Section 5.4) or (B) requiring, intending to cause, or which could reasonably be expected to cause East to abandon, terminate or fail to consummate the Merger or any other transaction contemplated by this Agreement (each, an "**East Acquisition Agreement**"). Any violation of the foregoing restrictions by the East Subsidiaries or by any Representatives of East or any of the East Subsidiaries, whether or not such Representative is so authorized and whether or not such Representative is purporting to act on behalf of East or any of the East Subsidiaries or otherwise, shall be deemed to be a breach of this Agreement by East. Notwithstanding anything to the contrary in this Agreement, prior to obtaining the East Stockholder Approval, East and the East Board may take any actions described in clause (ii) in the first sentence of this Section 5.4(a) with respect to a third party if (w) after the date of this Agreement, East receives a written Acquisition Proposal with respect to East from such third party (and such Acquisition Proposal was not initiated, solicited, knowingly encouraged or knowingly facilitated by East or any of the East Subsidiaries or any of their respective Representatives), (x) East provides Central the notice required by Section 5.4(g) with respect to such Acquisition Proposal, (y) the East Board determines in good faith (after consultation with East's financial advisors and outside legal counsel) that such proposal constitutes or could reasonably be expected to lead to a Superior Proposal with respect to East, and (z) the East Board determines in good faith (after consultation with East's outside legal counsel) that the failure to participate in such discussions or negotiations or to disclose such information or data to such third party would be inconsistent with its fiduciary duties; provided that East shall not deliver any information to such third party without first entering into an Acceptable Confidentiality Agreement with such third party. Notwithstanding the limitations set forth in this Section 5.4(a) and subject to compliance with East's obligations contained in Section 5.4(g), if East receives, following the date hereof and prior to the East Stockholders' Meeting, an unsolicited bona fide written Acquisition Proposal that did not result from a knowing and intentional breach of this Section 5.4, East and its Representatives may contact the Person or any of such Person's Representatives who has made such Acquisition Proposal solely to clarify the terms of such Acquisition Proposal so that East may inform itself about such Acquisition Proposal. Nothing contained in this Section 5.4 shall prohibit East or the East Board from taking and disclosing to the East Stockholders a position with respect to an Acquisition Proposal with respect to East pursuant to Rules 14d-9 and 14e-2(a) promulgated under the Exchange Act or from making any similar disclosure, in either case to the extent required by applicable Law.

28.     In addition, the Termination Fee section of the Merger Agreement requires WPX to pay a $ 75,000,000 "termination fee" in the event this agreement is terminated by WPX and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to WPX's ability to consider other offers.

29.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

30.     As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

31.     First, the Registration Statement omits material information regarding WPX's and Devon's financial projections.

32.     With respect to WPX's financial projections, the Registration Statement fails to disclose (i) all line items used to calculate EBITDA and (ii) projected unlevered, after-tax free cash flows. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

33.     With respect to Devon's financial projections, the Registration Statement fails to disclose (i) all line items used to calculate EBITDAX and (ii) projected, after-tax unlevered free cash flows. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

34.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

35. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor Citigroup Global Markets Inc. ("Citi") and Devon's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") in connection with the Proposed Transaction.

36. With respect to Citi's *Selected Company Analysis*, the Registration Statement fails to include the individual metrics for each company observed. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to Citi's *Discounted Cash Flow Analysis of WPX*, the Registration Statement fails to include: (i) WPX's standalone unlevered free cash flows forecasted for the fiscal years ending December 31, 2021 through December 31, 2025, (ii) WPX's terminal value, (iii) Citi's basis for applying an adjusted EBITDA multiples range of 3.9x to 5.3x, (iv) the individual inputs and assumptions underlying the range of discount rates of 7.7% to 8.5%, and (iv) WPX's net operating loss carryforwards. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to Citi's *Discounted Cash Flow Analysis of Devon*, the Registration Statement fails to include: (i) Devon's standalone unlevered free cash flows forecasted for the fiscal years ending December 31, 2021 through December 31, 2025, (ii) Devon's terminal value, (iii) Citi's basis for applying an adjusted EBITDA multiples range of 3.9x to 5.3x, (iv) the individual inputs and assumptions underlying the range of discount rates of 7.8% to 8.8%, and (iv) Devon's net operating loss carryforwards. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and

relevant information in considering how to vote.

39.     With respect to Citi's *Net Asset Value Analyses of WPX*, the Registration Statement fails to include: (i) the individual inputs and assumptions underlying the range of discount rates of 7.7% to 8.5%, (ii) unlevered, after-tax free cash flows forecasts, (iii) projected midstream distributions of Catalyst Midstream Partners LLC to WPX during the fiscal years ending December 31, 2021 through December 31, 2025, (iv) Citi's basis for applying aa terminal adjusted EBITDA multiple of 4.1x, (v) WPX's estimated non-drilling and completion capital expenditures, corporate expenses and net hedge and other gains and losses, (vi) WPX's estimated net debt as of December 31, 2020, and (vii) WPX's net operating loss carryforwards.  This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     With respect to Citi's *Net Asset Value Analyses of Devon*, the Registration Statement fails to include: (i) the individual inputs and assumptions underlying the range of discount rates of 7.8% to 8.8%, (ii) unlevered, after-tax free cash flows forecasts, (iii) Devon's estimated non-drilling and completion capital expenditures, corporate expenses and net hedge and other gains and losses, (iv) Devon's estimated net debt as of December 31, 2020, and (v) Devon's net operating loss carryforwards.  This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

41.     With respect to Citi's *Illustrative Has/Gets Analysis*, the Registration Statement fails to include: (i) Citi's basis for applying adjusted EBITDA multiples of 4.0x to 5.9x and 3.4x to 4.4x and estimated cash flow per share ("CFPS") multiples of 2.3x to 4.2x and 1.9x to 3.5x, (ii) the individual inputs and assumptions underlying the range of discount rates of 7.8% to 8.8%, and (iii)

9

the "synergies" used in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

42. With respect to Citi's *Price Target Analysis*, the Registration Statement fails to include the specific price targets observed in the analyses and the sources of those price targets. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

43. With respect to Citi's *Illustrative Potential Pro Forma Financial Effect of the Merger Analysis*, the Registration Statement fails to include (i) WPX's and Devon's fiscal years 2021 and 2022 estimated CFPS and estimated free cash flow per share (referred to as "FCFPS"), (ii) the potential synergies used in the analysis, and (iii) the extent to which the Proposed Transaction may be (a) accretive to WPX's fiscal years 2021 and 2022 estimated CFPS and estimated FCFPS and accretive to WPX's fiscal years 2021 and 2022 estimated FCFPS, and dilutive to WPX's fiscal years 2021 and 2022 estimated CFPS and (b) accretive to Devon's fiscal years 2021 and 2022 estimated CFPS and estimated FCFPS. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

44. With respect to J.P. Morgan's *Public Trading Multiples*, the Registration Statement fails to include the individual multiples and metrics for each company observed. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

45. With respect to J.P. Morgan's *Net Asset Value Analyses of WPX*, the Registration Statement fails to include: (i) WPX's projected asset-level cash flows, (ii) the individual inputs and

assumptions underlying the application of a range of discount rates of 11.0% to 13.0% to WPX's projected asset-level cash flows, (iii) WPX's weighted average cost of capital ("WACC"), (iv) WPX's general and administrative expenses, minimum volume commitment deficiency payments, additional midstream liabilities, hedges, taxes and net operating losses, and (v) the number of fully diluted WPX shares outstanding. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

46. With respect to J.P. Morgan's *Net Asset Value Analyses of Devon*, the Registration Statement fails to include: (i) Devon's projected asset-level cash flows, (ii) the individual inputs and assumptions underlying the application of a range of discount rates of 10.75% to 12.75% to Devon's projected asset-level cash flows, (iii) Devon's WACC, (iv) Devon's general and administrative expenses, hedges, taxes and net operating losses, and (v) the number of fully diluted Devon shares outstanding. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

47. With respect to J.P. Morgan's *Value Creation Analysis*, the Registration Statement fails to include: (i) the estimated present value of the Synergies and (ii) net present value of the reduction in net operating losses. This information must be disclosed to make the Registration Statement not materially misleading to WPX stockholders and provide stockholders with full and relevant information in considering how to vote.

48. Third, the Registration Statement fails to disclose the actual amount of compensation Citi will receive in connection with the Proposed Transaction.

49. Full disclosure of investment banker compensation and all potential conflicts is material information stockholders of WPX are entitled to receive in deciding what weight to place on

the opinions and roles played by the investment banks in the Proposed Transaction.

50. Fourth, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" ("DADW") provisions that are or were preventing the counterparties, including Company A, from submitting superior offers to acquire the Company.

51. The omission of the above-referenced material information renders the Registration Statement false and misleading.

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

55. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration

Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

56. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

57. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.

The Individual Defendants were thus directly involved in the making of the Registration Statement.

63. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: November 18, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*

16